UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-cr-60161-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,
v.

TIMOTHY BROWN,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Timothy Brown's ("Defendant") Renewed Motion for Modification of Sentence for Extraordinary and Compelling Reasons, ECF No. [50] ("Motion"). The Government filed its Response in Opposition, ECF No. [52] ("Response"), to which Defendant filed a Reply, ECF No. [53] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is granted.

### I. BACKGROUND

On August 18, 2014, Defendant pled guilty to one count of conspiring to possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846. ECF No. [24]. On November 14, 2014, Defendant was sentenced to a term of imprisonment of 151 months, followed by three years of supervised release. ECF No. [29]. On October 25, 2017, this Court granted the Government's Rule 35 motion and reduced Defendant's sentence to a total of 113 months' imprisonment. ECF No. [39]. Defendant is currently housed at Forrest City Low in Forrest City, Arkansas, and is scheduled to be released from custody on July 10, 2022.

Defendant initially filed a motion for compassionate release on April 21, 2020, ECF No. [40]; *see also* ECF Nos. [44] & [45], which the Court denied after full briefing because Defendant failed to exhaust his administrative remedies or establish that extraordinary and compelling reasons existed to grant compassionate release, ECF No. [49]. Defendant now files the instant Motion renewing his request for compassionate release due to the ongoing COVID-19 pandemic and the outbreak of infections at Forrest City Low, arguing that his underlying medical conditions — namely, Type 2 diabetes, hypertension and resulting high blood pressure — put him at an increased risk of contracting the virus, and that the circumstances surrounding the Court's initial denial of his request have changed. In particular, Defendant notes that the Government has received new internal guidance from the Department of Justice (DOJ) regarding what constitutes extraordinary and compelling circumstances in compassionate release cases where defendants have certain health issues that the CDC has identified as heightened risk factors for contracting serious cases of COVID-19. Moreover, Defendant argues that his release is warranted because he poses no danger to the community, given his exemplary disciplinary record while incarcerated and his participation in numerous rehabilitative courses and programs while in custody. As such, Defendant requests that this Court reduce his sentence to time served and, as a condition of supervised release, that the Court impose a period of time in a halfway house. Although the Government concedes that Defendant has exhausted his administrative remedies and has established extraordinary and compelling circumstances, it again opposes Defendant's request because his lengthy criminal history suggests that he poses a threat to the safety of the community.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with almost

5,800,000 confirmed cases and close to 179,000 reported deaths as of August 27, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning, and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Aug. 27, 2020).

ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

4

> defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> 
>> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>> . . . .
> 
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018).[2] The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the

---

[2] In his Motion, Defendant requests that the Court reduce his sentence to time served with the additional imposition of a period of time in a halfway house as a condition of supervised release.

> The Court may, in its discretion, modify a condition of supervised release at any time prior to the expiration of the supervised release term, pursuant to the provisions governing the initial setting of supervised release conditions. 18 U.S.C. § 3583(e)(2); *United States v. Johnson*, 529 U.S. 53, 60 (2000). Specifically, the Court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) in setting the conditions of supervised release. 18 U.S.C. § 3583(e).
> Although the Court generally must hold a hearing before modifying the conditions of supervised release, a hearing is not required if: (1) the relief sought is favorable to the defendant and does not extend the term of supervised release; and (2) the government has received notice of the relief sought, had a reasonable opportunity to object, and did not do so. Fed. R. Crim. P. 32.1(c)(2)(B)-(C).

*United States v. Johnson*, No. 4:00-CR-40023, 2020 WL 1434367, at *5 (W.D. Ark. Mar. 24, 2020).

5

> Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

The Government concedes that Defendant has exhausted his administrative remedies. ECF No. [52] at 1. The Government also affirms that, pursuant to updated internal guidance from the DOJ, inmates such as Defendant who present certain CDC risk factors, including Type 2 diabetes and hypertension, automatically establish extraordinary and compelling circumstances. *Id.*[3] In

---

[3] The Court also notes that Defendant's Motion describes the conditions at Forrest City Low, where Defendant is housed, and the BOP's insufficient response to COVID-19 outbreaks, which further support the existence of extraordinary and compelling circumstances beyond those presented regarding Defendant's medical issues. ECF No. [50] at 5-8; ECF No. [50-3]. Most alarming is the fact that Forrest City Low not only has one of the highest total rates of inmates who have tested positive for COVID-19, but it also releases "recovered" inmates who previously tested positive back into general population without any concrete scientific data on the contagiousness or immunity of these recovered inmates. *United States v. Hanson*, No. 6:13-CR-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged . . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of infection, given the high numbers of infected inmates and defendant's own contraction of the virus."); *see also COVID-19 Cases*, Bureau of Prisons, available at https://www.bop.gov/coronavirus/ (last visited Aug. 25, 2020).

light of these concessions,[4] the Court focuses its analysis on the relevant § 3553(a) factors and Defendant's danger to the community. The Government maintains that Defendant's request is unwarranted because the relevant § 3553(a) factors weigh against his release and, given his significant criminal history, he still poses a danger to the safety of the community. Defendant disagrees and points to his lack of disciplinary history, his participation in rehabilitative programming while in custody, and the BOP's recommendation that Defendant be transferred to a minimum-security facility near South Florida due to his positive institutional adjustment.[5]

> The applicable sentencing factors under § 3553(a) include:
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
> . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court acknowledges at the outset that Defendant's underlying offense is undoubtedly serious, as is Defendant's lengthy criminal history, although this criminal history is substantially

---

[4] In its Response, the Government does not comment on the quality of Defendant's release plan—i.e., his placement in a halfway house for a period of time upon release, as a condition of supervised release. Thus, the Court construes the Government's silence as acquiescence to the proposed release plan.

[5] *See* ECF No. [48-4] at 1 (recommending Defendant be transferred to a minimum-security facility near South Florida due to his positive institutional adjustment based, in part, on his participation in rehabilitative programming, good behavior, and good work performance while in custody).

based upon Defendant's criminal conduct as a minor. Further, at the time of sentencing, the Court concluded that a term of imprisonment of 151 months was an appropriate punishment for Defendant's conduct, in light of the § 3553(a) considerations, and it later reduced this term of imprisonment to 113 months upon the Government's Rule 35 motion, *see* ECF Nos. [35] & [39]. Thus, the Court has already assessed whether a sentence reduction was appropriate in this case and, upon review of the relevant sentencing factors, it imposed a reduced sentence. Nonetheless, this does not end the Court's inquiry.

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.

*United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020).

The Defendant has remained in custody since his arrest on July 2, 2014, and was sentenced on November 17, 2014. To date, Defendant has served approximately 64% of his sentence, during which time he has participated in numerous rehabilitative programs and classes, worked toward obtaining his GED, and received good work performance ratings from his supervisors at his job in the prison bakery. ECF No. [53] at 3. Moreover, Defendant is currently housed in a minimum-security facility and has maintained a perfect disciplinary record during his time in custody. *Id.* at 4. Contrary to the Government's position, the Court finds that these rehabilitative efforts weigh heavily in favor of Defendant's release, especially in light of the substantial length of time Defendant has already served and his exemplary conduct while incarcerated. *United States v. Camacho*, No. 2:11-CR-00085-01, 2020 WL 4498796, at *3 (W.D. La. Aug. 4, 2020).

Additionally, the Court considers these factors in the context of Defendant's medical conditions and the extraordinary and compelling circumstances in this case. "When the Court sentenced [the defendant], the Court did not intend for that sentence to 'include incurring a great

and unforeseen risk of severe illness or death' brought on by a global pandemic." *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) (quoting *United States v. Rodriguez*, 03 Cr. 271-1, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)). Upon consideration of the entire record in this case, and in light of the lengthy sentence Defendant has already served, the Court concludes that a sentence reduction is not inconsistent with the goals of sentencing, to adequately reflect the seriousness of Defendant's conduct, promote respect for the law, provide just punishment for his offenses, and afford adequate deterrence to criminal conduct. *See United States v. Scott*, No. CR 1:02-00241-01, 2020 WL 4905749, at *3 (S.D. W. Va. Aug. 19, 2020). As such, the applicable § 3553(a) factors weigh in favor of granting Defendant's Motion.

Turning to whether Defendant poses a danger to the safety of the community, § 3142(g) sets forth the relevant factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>     (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>     (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). "The factors listed in 3142(g) are largely duplicative of those in 3553(a)." *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (quoting *United States v. Salvagno*, No. 02-51, 2020 WL 3410601, at *7 (N.D.N.Y. Apr. 23, 2020)).

9

The Court agrees with Defendant that he no longer poses a danger to the safety of the community due to his exemplary disciplinary record while in custody, his significant rehabilitative efforts, and his approval for transfer to a minimum-security facility due to his positive institutional adjustment. The Court commends the Defendant on his progress and positive development exhibited while in custody and applauds him for his impressive record and his efforts toward self-improvement. These rehabilitative efforts, as explained above, weigh in favor of Defendant's request for release. *See United States v. Williams*, No. 3:04CR95/MCR, 2020 WL 1751545, at *3 (N.D. Fla. Apr. 1, 2020) (concluding that, "given [Defendant's] age, serious health problems, the substantial amount of time he has already served, and his exemplary prison record, factors which are now a part of his history and characteristics, the Court finds that the risk of him engaging in further criminal conduct is minimal and can be managed through . . . the terms of his supervised release"). To be sure, Defendant's criminal history is extensive. The Presentence Investigation Report in this case details Defendant's lengthy criminal history, which includes a total of eighteen criminal convictions aside from his conviction in the instant case spanning from when Defendant was thirteen years old to when he was thirty-three years old. *See* ECF No. [28] at 9-22 (Presentence Investigation Report discussing Defendant's criminal history and convictions for possession of stolen property and burglary tools, theft, grand theft auto, burglary, retail theft, trespassing, attempted burglary, loitering, strong arm robbery, resisting arrest without violence, battery, aggravated assault, criminal mischief, drug charges, and carjacking). Further, Defendant was sentenced as a career offender based on his past criminal conduct.

However, it is worth noting that most of the prior instances of Defendant's criminal conduct were for acts committed while he was still a minor. *Id.* In the Court's view, Defendant's more recent conduct is more indicative of the risk he currently poses to the safety of the community, and this more recent behavior weighs heavily in favor of his release. Notably, in addition to the

significant rehabilitative programming and perfect disciplinary history, Defendant has demonstrated that he is capable of properly reintegrating into society, in part, through his approval for transfer to a minimum-security facility in South Florida. *See* ECF No. [48-4] at 1 (recommending Defendant be transferred to a minimum-security facility near South Florida due to his positive institutional adjustment based on his participation in programming and good work performance while in custody, among other things). Moreover, any concerns regarding Defendant's possible recidivism upon release can be addressed through his 3-year term of supervised release. *See Johnson*, 2020 WL 1434367, at *5 (noting that, in light of the relevant factors, "the Court does not believe that Defendant is likely to recidivate or that he would otherwise pose a danger to the community. Moreover, the Court finds that any potential risk to the community can be managed by a term of supervised release." (citing *United States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *5 (N.D. Iowa Jan. 8, 2020))); *see also Williams*, 2020 WL 1751545, at *3. Thus, the Court does not find that Defendant would pose a danger to the community if released.

The Court determines that Defendant has sufficiently satisfied each of the four compassionate release considerations. Therefore, Defendant's Motion is granted, subject to the conditions set forth below.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [50]**, is **GRANTED**.
2. Defendant's term of imprisonment is reduced to **TIME SERVED**, plus the time reasonably necessary for the BOP and the United States Probation Office to secure Residential Reentry Center (RRC) placement for Defendant, with direct transfer to the RRC per the special conditions of supervised release set forth below.

3. Defendant shall be subject to a term of supervised release of three years, as imposed in the Amended Judgment, **ECF No. [31]**.

4. As a special condition of supervised release, Defendant shall reside at a designated RRC for up to the first year of supervised release, or until he has established a residence approved by the U.S. Probation Office, whichever comes first. All other special conditions set forth in the Amended Judgment, **ECF No. [31]**, remain in full force and effect.

5. Immediately upon his release from BOP custody, Defendant shall remain in self-quarantine for a period of **not less than fourteen (14) days**.

6. Defendant must report via telephone to the U.S. Probation Office at (305) 523-5403 in the Southern District of Florida **within forty-eight (48) hours** of his release from BOP custody.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 28, 2020.

**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Timothy Brown
63437-004
Forrest City Low
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 9000
Forrest City, AR 72336